No. 04-984 C

(Filed June 7, 2005)

**UNPUBLISHED**

* * * * * * * * * * * * * * * * * * * * * *

KEITH DOHSE, *
*
*Plaintiff*, *
*
v. *
*
THE UNITED STATES, *
*
*Defendant*. *

* * * * * * * * * * * * * * * * * * * * * *

*Howard N. Epstein*, Omaha, NE, for plaintiff.

*Michael Francis Kiely*, with whom were *Peter D. Keisler*, Assistant Attorney General, and *Thomas J. Marshall*, Managing Counsel, Civil Practice Section, United States Postal Service, Washington, D.C., for defendant.

## OPINION

**BUSH**, *Judge*

The court has before it Defendant's Motion to Dismiss (Def.'s Mot. or defendant's motion), filed August 23, 2004, which has been fully briefed by the parties.[1] For the reasons set forth below, defendant's motion is granted in part and

[1]/ Although defendant predicted that it would file an additional motion to dismiss any requests (continued...)

denied in part.

## BACKGROUND[2]

Plaintiff Keith Dohse has two highway contract route (HCR) mail delivery contracts with the United States Postal Service (USPS): HCR 69384 and HCR 69362 in and around Gordon, Nebraska. The contract period for HCR 69384 began July 1, 2002 and will end June 30, 2005. The contract period for HCR 69362 began July 1, 2002 and will end June 30, 2006. Plaintiff's annual reimbursement for the services provided in fulfilling these two contracts totals approximately $68,000, as of June 9, 2004.

Mr. Dohse alleges that he is an "individual sole proprietor owner-operator" for the mail delivery contracts. Compl. ¶ 20. The USPS investigated Mr. Dohse and has denied him access to the mail and postal facilities "because of an incident regarding alleged threats of violence towards Postal employees at the Gordon, NE Post Office." *Id.* Ex. 3. Mr. Dohse appealed his access denial to authorities at the USPS and his appeal was denied. Mr. Dohse alleges that he has been forced to employ individuals to deliver the mail on his two HCR routes and that the services of these individuals cost him approximately $20,000 per year. Plaintiff asserts a breach of contract claim and specifies damages of "at least $20,000 . . . for extra salaries," *id.* at 6, as well as damages for other costs related to his mail delivery services being "interfered with, thereby causing economic harm to Dohse in an amount to be determined," *id.* ¶ 28.

Plaintiff also requests equitable relief, asking the court "to overrule the decision of the USPS denying him access to the mail and the postal facilities." Compl. at 6. Plaintiff asserts that this court has jurisdiction over his claims

---

[1](...continued)
for injunctive relief that might be pending in this action, Def.'s Reply at 1 n.1, defendant has not done so. Because plaintiff's requests for equitable relief may be considered by this court only if it possesses jurisdiction over such requests, the court addresses the threshold equitable jurisdiction issue *sua sponte.*

[2]/ The facts recited here are taken from the complaint and are undisputed by the parties. The court makes no findings of facts in this opinion.

pursuant to the Tucker Act, 28 U.S.C. § 1491 (2000), and the Contract Disputes Act of 1978, 41 U.S.C. §§ 601-613 (2000) (CDA). Defendant filed its motion to dismiss solely under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC) asserting that the court lacks jurisdiction over this action.

## DISCUSSION

### I. Standard of Review

The court's determination of jurisdiction starts with the complaint, "which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997) (citations omitted). If jurisdiction is found to be lacking, this court must dismiss the action. RCFC 12(h)(3). In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), this court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183, 191 (1984); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). Nonetheless, the non-movant bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Cubic Def. Sys., Inc. v. United States*, 45 Fed. Cl. 239, 245 (1999) (citing *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993); *Reynolds*, 846 F.2d at 748; *Maniere v. United States*, 31 Fed. Cl. 410, 413 (1994)).

### II. Analysis

#### A. CDA Breach of Contract Monetary Claim

##### 1. Nature of Claim

Plaintiff does not identify a specific contract clause that the USPS may have breached when it denied him access to the mail and postal facilities. Rather, plaintiff defines the USPS breach of contract as "denying him the ability to perform the services for which he contracted, as an individual sole proprietor owner-operator, including sorting and delivery of the mail." Compl. ¶ 23. Nor does

plaintiff identify a contract clause that may have been breached by the other miscellaneous interference that plaintiff alleges to have occurred, such as harassment and interference with contract performance. Rather, plaintiff alleges that the USPS

> fail[ed] to abide by the following requirements of the contracts:
> a. The Postmaster, as the administrative official at the Gordon, Nebraska post office, was to show and teach the routes to Dohse, but failed to do so, thereby causing Dohse to spend unauthorized mileage and time to learn the routes on his own;
> b. By failing to pay the correct mileage of the routes;
> c. By failing to give ten (10) tags after he and his employees were cleared to operate the contract;
> d. By removing Dohse's employees from the contracted routes for no reason;
> e. By refusing to allow Dohse and his employees into the post office in the early mornings as per the contracts;
> f. By failing to allow Dohse and his employees into the post office on Saturday afternoons to complete the requirements of his mail route contracts; and
> g. By preventing Dohse's new employees from working by issuing an emergency badge.

*Id.* ¶ 25. The court will assume that plaintiff's breach of contract claim is for breach of the government's covenant of good faith and fair dealing in managing its contracts. *See Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005) ("The covenant of good faith and fair dealing is an implied duty that each party to a contract owes to its contracting partner. The covenant imposes obligations on both contracting parties that include the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract.") (citations omitted).

### 2. Failure to Exhaust Administrative Remedies

Plaintiff's breach of contract claim has never been presented to the USPS contracting officer. *See* Pl.'s Opp. at 4 (stating that "Dohse did not specifically seek monetary relief from the USPS"). Failure to exhaust administrative remedies is fatal to a monetary claim under the CDA. *See England v. Swanson Group, Inc.*, 353 F.3d 1375, 1379 (Fed. Cir. 2004) ("We have held, based on the statutory provisions [of the CDA], that the jurisdiction over an appeal of a contracting officer's decision is lacking unless the contractor's claim is first presented to the contracting officer and that officer renders a final decision on the claim.") (citing *James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1541-42 (Fed. Cir. 1996)). Plaintiff has had a full opportunity to respond to defendant's legal argument concerning the failure to submit a monetary claim for breach of contract to the USPS contracting officer, and has admitted that no monetary claim was filed with the contracting officer. Because plaintiff has never filed a monetary claim with the contracting officer for the damages asserted here, the court is without jurisdiction to hear plaintiff's breach of contract monetary claim.

### B. Jurisdiction for CDA Nonmonetary Claims

This court has very limited equitable powers. *See Massie v. United States*, 226 F.3d 1318, 1321 (Fed. Cir. 2000) ("Except in strictly limited circumstances, *see* 28 U.S.C. § 1491(b)(2), there is no provision in the Tucker Act authorizing the Court of Federal Claims to order equitable relief."). Nonetheless, in 1992 an amendment to the Tucker Act, Pub. L. No. 102-572, Title IX, § 907(b)(1), 106 Stat. 4506, 4519 (1992), "enlarged . . . th[is] court's jurisdictional foundation." *Info. Sys. & Networks Corp. v. United States*, 48 Fed. Cl. 265, 268 (2000). The Tucker Act now states that

> [t]he Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act.

28 U.S.C. § 1491(a)(2). Thus, Congress has afforded this court the power to order equitable relief for nonmonetary claims under the CDA upon which the government's contracting officer has rendered a final decision. *Id.*; *see Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1270 (Fed. Cir. 1999) ("We have held . . . that the Tucker Act grants the Court of Federal Claims jurisdiction to grant nonmonetary relief in connection with contractor claims, including claims requesting an interpretation of contract terms."); *Garrett v. Gen. Elec. Co.*, 987 F.2d 747, 750 (Fed. Cir. 1993) (stating that the "1992 Act expanded the jurisdiction of the Court of Federal Claims to embrace some nonmonetary disputes [under the CDA]").

In this case, plaintiff alleges that he has received a final decision on his request "asking the contracting officer to grant him access to the mail and to the postal facilities so that he could perform the services for which he contracted, as an individual sole proprietor owner-operator, including sorting and delivery of the mail." Pl.'s Opp. at 4. This allegation raises two questions: (1) Was plaintiff's request a claim under the CDA?; and (2) Was the USPS response to plaintiff's request a final decision of the contracting officer? The court addresses these questions in turn.

The CDA does not define the word "claim." *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed. Cir. 1995). The word "claim" is defined in the Federal Acquisition Regulations (FAR), however. *Id.* Thus, according to the FAR provision in force at the time these contracts were written,

> [c]laim means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract.

48 C.F.R. § 33.201 (2001). Beyond the regulatory definition of a claim, this court must also look to "the language of the contract in dispute, and the facts of the case," in order to determine whether a claim has been submitted to the contracting officer. *Reflectone*, 60 F.3d at 1575; *see also Garrett*, 987 F.2d at 749 (quoting *Dawco Constr., Inc. v. United States*, 930 F.2d 872, 877 (Fed. Cir. 1991), *overruled on other grounds by Reflectone*, 60 F.3d at 1583).

The parties have not submitted any excerpts from plaintiff's contracts with the USPS that bear on the issue of whether plaintiff's request to the contracting officer was indeed a claim under the CDA. Plaintiff did submit, however, excerpts from plaintiff's USPS contracts that indicate that access to the mail and to the postal facilities might be integral to plaintiff's contract performance. Compl. ¶¶ 7-8. Based on the allegations in the complaint concerning the facts of the case, the court will assume, for the purpose of deciding defendant's motion to dismiss and construing all reasonable inferences in favor of plaintiff, that plaintiff's request was of the type that arises under and relates to his contracts with the USPS. The court will also assume for the purposes of deciding this motion, although it is not perfectly clear from the record, that at least one of plaintiff's requests for access to the mail and postal facilities was in writing. *See id*. Ex. 3 (letter from Russell A. Sykes of June 11, 2003) (stating that Mr. Dohse's "appeal of the decision by the Contracting Officer to [deny his] access to the mail has been forwarded to this office for adjudication"). A written assertion of a right arising under these contracts would possibly satisfy the FAR definition of a claim, now found at 48 C.F.R. § 2.101 (2004).

It is also possible that the response plaintiff received from the USPS was the final decision of the contracting officer. The letter plaintiff received from Leslie R. Carpenter, Manager, Transportation Contracts, stated that "we have made the final determination to permanently deny you access to the mail and postal premises." *Id*. Ex. 2. After plaintiff appealed this decision with the USPS, the next USPS response referred to Leslie R. Carpenter as "the Contracting Officer."

Typically, a final decision of the contracting officer would have notified plaintiff of his appeal rights under the CDA. *See* 48 C.F.R. § 33.211 (2002); *see also Placeway Constr. Corp. v. United States*, 18 Cl. Ct. 159, 165 (1989) (*Placeway I*) (refusing to find that a letter from a contracting officer was a final decision because "the letter d[id] not contain any language stating it [wa]s a 'final decision' and d[id] not contain the 'appeal rights' language required by regulation"), *rev'd*, 920 F.2d 903 (Fed. Cir. 1990) (*Placeway II*). But a decision by the contracting officer which lacks this boilerplate language may still be construed as a final decision triggering appeal rights in this court. *See Placeway II*, 920 F.2d at 907 ("The [contracting officer's] decision is no less final because it failed to include boilerplate language usually present for the protection of the contractor."). Plaintiff has alleged facts that, if true, might be construed to support equitable

jurisdiction in this court over plaintiff's nonmonetary claim.

Although plaintiff must prove jurisdiction by a preponderance of the evidence, plaintiff must be afforded the opportunity to present his evidence in support of his well-pleaded complaint. *See Reynolds*, 846 F.2d at 748 (stating that "the party asserting jurisdiction must be given an opportunity to be heard before dismissal is ordered"). Here, defendant's motion to dismiss focused on plaintiff's monetary claims, and asserted that plaintiff had not submitted a monetary claim to the contracting officer and that plaintiff was not in receipt of a final decision on such a claim. Def.'s Mot. at 5. Defendant's only legal argument against this court's jurisdiction over plaintiff's nonmonetary claim was presented in a footnote in defendant's reply brief, in which it was also announced that "[d]efendant shall shortly file a motion to dismiss with respect to plaintiff's request for injunctive relief." Def.'s Reply at 1 n.1. This second motion to dismiss was never filed, and plaintiff has not yet had an opportunity to respond to defendant's argument regarding this court's jurisdiction over plaintiff's request for injunctive relief.

For these reasons, defendant's motion to dismiss for lack of jurisdiction is denied as to plaintiff's request for injunctive relief regarding access to the mail and to postal facilities.

## CONCLUSION

For the above reasons, it is hereby **ORDERED** that:

(1) Defendant's Motion to Dismiss, filed August 23, 2004, is **GRANTED IN PART**, as to plaintiff's breach of contract monetary claim, and **DENIED IN PART**, as to plaintiff's request for injunctive relief regarding access to the mail and to postal facilities.

(2) As there is no just reason for delay pursuant to RCFC 54(b), the Clerk's office is directed to **ENTER** judgment in favor of defendant dismissing plaintiff's request for relief in the form of specified and unspecified monetary damages for lack of jurisdiction. The only remaining claim in this case is for equitable relief.

(3) Defendant shall have sixty days, or until Monday, **August 8, 2005**, to **FILE** its answer in this case or a second motion to dismiss.

s/Lynn J. Bush

LYNN J. BUSH
Judge